06 MAR 13 PM 4:35

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **KUNAL SAHA**<br>3937 Kul Circle South<br>Hilliard, Ohio 43026, | Case No.:_____ |
| **Plaintiff** | Judge __JUDGE SMITH__ |
| vs | MAGISTRATE JUDGE ABEL |
| **OHIO STATE UNIVERSITY**<br>203 Bricker Hall<br>190 Oval Mall<br>Columbus, Ohio 43036, | |
| **COLUMBUS CHILDREN'S<br>HOSPITAL RESEARCH<br>INSTITUTE**<br>700 Children's Drive<br>Columbus, Ohio 43205, | **VERIFIED COMPLAINT FOR<br>WRONGFUL TERMINATION** |
| **PHILLIP JOHNSON<br>COLUMBUS CHILDREN'S<br>HOSPITAL RESEARCH<br>INSTITUTE**<br>700 Children's Drive<br>Columbus, Ohio 43205, | **Injunctive Relief Requested**<br><br>**Jury Demand Endorsed Hereon** |
| and | |
| **THOMAS HANSEN<br>OHIO STATE UNIVERSITY**<br>203 Bricker Hall<br>190 Oval Mall<br>Columbus, Ohio 43205, | |
| **Defendants** | |

1

Now comes, Kunal Saha, M.D., Ph.D., by and through counsel, and for his complaint against the Ohio State University and Columbus Children's Hospital Research Institute alleges the following:

## THE PARTIES

1.     Plaintiff, Kunal Saha, is a naturalized citizen of the United States who was born near Calcutta, India.

2.     Defendant, The Ohio State University, is an institution of higher learning and an agency of the State of Ohio with its principal place of business located in Columbus, Ohio ("OSU").

3.     Defendant, Columbus Children's Hospital Research Institute, is an Ohio non-profit organization with its principal place of business located in Columbus, Ohio ("CCHRI").

4.     Defendants OSU and CCHRI maintain a business and professional relationship which, among other things, results in the joint employment of certain faculty of OSU's Department of Pediatrics who conduct research for CCHRI in laboratories located on the campus of OSU and who also discharge teaching duties at OSU.

## JURISDICTION AND VENUE

5.     This is a suit instituted pursuant to 42 U.S.C. §1983 which protects individuals against deprivations of civil rights by persons acting under color of state law; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e which prohibits discrimination in the terms and conditions of employment; and pursuant to Ohio Rev. Code §4112.99, prohibiting discrimination in employment on the basis of race and national origin.

6.     Jurisdiction over Counts I through X of this action is conferred on this Court by 28 U.S.C. §1331 because these claims arise under the laws of the United States, 28 U.S.C.

2

§1343(a)(3) because Plaintiff seeks the redress of deprivation under color of state law, of rights secured to him by Acts of Congress providing for equal rights of citizens and 42 U.S.C. §2000e-5(f). This Court has pendent jurisdiction over Counts XII and XIII because these claims arise from the same facts and circumstances as Counts I through X.

7.      Venue is properly laid in the Southern District of Ohio under 28 U.S.C. §1391(b) because Plaintiff and Defendants are located within Franklin County and the claims arose within Franklin County, Ohio.

8.      Plaintiff filed a charge of discrimination with the United States Equal Employment Commission ("EEOC") against OSU on October 4, 2005 and has received a Notice of Right to Sue dated December 13, 2005. (Exhibit A)

9.      Plaintiff filed a charge of discrimination with the EEOC against Children's Hospital Research Institute on January 20, 2006 and received a Notice of Right to Sue dated January 25, 2006. (Exhibit B)

10.     Plaintiff brings this action within the 90 days permitted in each of Exhibit A and B.

## FACTUAL BACKGROUND

11.     In June 1998, Plaintiff began employment by OSU as a "tenure-track" Assistant Professor in the Department of Pediatrics, pursuant to a five-year contract of employment.

12.     Simultaneously, Plaintiff began employment by CCHRI as a member of the Division of Molecular Medicine with a primary focus on HIV and AIDS research.

13.     Through December 2001, Plaintiff made substantial progress in HIV and AIDS research including a new breakthrough discovery on AIDS which was published in "Nature

3

Medicine", a nationally recognized journal of medicine.  Plaintiff was also the only Assistant Professor working at CCHRI to obtain two or more research grants.

14.     In December 2001, Plaintiff was invited to India as a speaker at an International AIDS Conference.  While there, the Supreme Court of India decided that, if Plaintiff could remain in India, the Court would proceed with a criminal investigation into the death of Plaintiff's first wife. She had died in India in May 1998 and Plaintiff had filed a complaint against her surgeons for medical negligence.

15.     Plaintiff remained in India from mid-December 2001 to late April 2002 when the criminal trial ended.

16.     During his absence in India, Plaintiff kept then director of CCHRI, Dr. Philip Johnson, fully informed and continued to monitor his students and direct the research in his laboratory.

17.     Plaintiff's returned to Columbus on April 29, 2002 and the next day, Dr. Johnson advised Plaintiff that effective June 30, 2002, CCHRI's internal support package for Plaintiff's research would be terminated.

18.     This unwarranted action by Dr. Johnson caused Plaintiff to fire his lab workers, virtually close his lab and almost completely stop his research and publication activity.

19.     Thereafter, Dr. Johnson spearheaded a conspiracy against Plaintiff surrounding the false allegation that while in India, Plaintiff failed to inadequately monitor students which failure allegedly lead to a student being upset and/or transferring to another institution or program.

20.     The nature of Plaintiff's employment with OSU entailed a mandatory review for promotion in his fourth year of employment.

21.     On the basis of Dr. Johnson's false allegations, Plaintiff initially was denied promotion in his fourth year review.

22.     Plaintiff refuted Dr. Johnson's allegations in an appeal to the Dean of OSU's College of Medicine, Plaintiff's students directly refuted the allegation of inadequate monitoring and further testified that none of them was upset or had switched programs as a result of Plaintiff's extended stay in India.

23.     OSU received the decision to deny Plaintiff his fourth year promotion.

24.     In October 2003, the Department of Pediatrics voted against Plaintiff's tenure application on the erroneous charges that he had not achieved adequate accomplishments in research and had provided inadequate mentoring.

25.     Plaintiff was informed of the negative vote on his tenure application in June 2004 and then advised that under OSU procedures, he would be given a one-year terminal period making June 30, 2005, the last day of his appointment at OSU.

26.     The aforementioned negative vote, was conducted in violation of OSU established rules for the processing and consideration of tenure decisions.

27.     Plaintiff is informed and believes that his record of accomplishments was far superior to those of three similarly-situated candidates from the same department/division who received tenure in the past three years.

28.     Plaintiff appealed the denial of his tenure to the OSU Committee on Academic Freedom and Responsibility ("CAFR") and documented in his appeal to CAFR, that the denial of tenure was the result of unlawful discrimination and retaliation.

29. CAFR reviewed Plaintiff's appeal and referred the matter to the OSU Hearing Committee ("Committee") before which most members of the Department of Pediatrics testified. Dr. Johnson refused to appear before the Committee.

30. It was not until June 22, 2005, following a thorough review of the facts and circumstances surrounding the denial of Plaintiff's tenure, that the Committee determined that Plaintiff's tenure review was "fundamentally unfair" and remanded Plaintiff's tenure application to the Department of Pediatrics to conduct a "new, fair, and impartial review".

31. The regular tenure review process provides a candidate the opportunity to be informed of, and react to votes regarding his/her tenure application at the various levels of OSU at which such votes are taken.

32. From and after June 22, 2005 when the Committee determined that the 2004 tenure vote was "fundamentally unfair", Plaintiff was not informed about any vote on his tenure application by the faculty of the Department of Pediatrics.

33. Applicable OSU procedures and rules provide that a reasonable period of time (e.g. two weeks) should be given to eligible faculty members to consider and vote on a tenure recommendation.

34. On June 30, 2005, Plaintiff contacted OSU Vice-Provost, Carol Anderson, and learned that the "new review" *had already been completed* at the departmental level and that recommendation had already been forwarded to the next level, the OSU College of Medicine, to be reviewed by its Promotion and Tenure Committee and its Dean.

35. In violation of OSU recommended procedures, the "new review" at the departmental level had been completed in less than eight (8) days.

6

36.     The promotion and tenure review procedures for tenure-track faculty, are set forth in the OSU Administrative Code ("A.C.).

37.     A.C. Rule 3335-6-04 provides that a candidate for tenure should be notified in writing of the completion of the departmental level review and the recommendation of the department chair regarding his tenure.

38.     The aforementioned Rule further provides that the candidate should be afforded ten (10) days to submit written comments to be included in his dossier before it is forwarded to the Dean of the College of Medicine for review.

39.     In violation of A.C. Rule 3335-6-04, Plaintiff was not advised of the departmental decision and therefore, was deprived of an opportunity to correct any erroneous or misleading information of the nature that lead to his 2004 tenure review being deemed "fundamentally unfair".

40.     A.C. Rule 3335-6-04, also provides that a candidate for tenure should be notified after the Dean of the College of Medicine has completed the review of his dossier, and should be provided another ten (10) days to file written comments to the Dean's recommendation before the candidate's dossier is forwarded to the Provost for a final decision.

41.     Plaintiff was not advised of the recommendation, if any, of the Dean of the College of Medicine and therefore, Plaintiff was deprived of the opportunity to correct erroneous data before the Dean's recommendation was forwarded to the Provost.

42.     Even though (a) the "new, fair, and impartial" review recommended by the Committee, was not been completed; and (b) the most recent departmental vote clearly violated the A.C., Plaintiff was terminated from OSU effective June 30, 2005.

7

43. On July 2, 2005, CCHRI informed Plaintiff that, because he was no longer on the faculty of OSU, he had been terminated from CCHRI and would have to vacate his CCHRI laboratory not later than July 15, 2005.

44. CCHRI offered to store the Plaintiff's already frozen research sample for a period of six (6) months but no accommodation has been made regarding Plaintiff's on-going experiments with HIV which cannot be frozen or stored.

## COUNT I
### 42 U.S.C. §1983 Equal Protection
### (Defendants OSU and Thomas Hansen)

45. Plaintiff realleges the prior paragraphs, as if fully set forth below.

46. Defendants' actions have denied Plaintiff's right to the equal protection of the laws as secured to him by the Fourteenth Amendment to the Constitution of the United States and enforced through 42 U.S.C. §1983.

47. As a result of Defendants' conduct, Plaintiff has been damaged in an amount to be determined at trial but being not less than One Hundred Fifty Thousand Dollars ($150,000).

## COUNT II
### 42 U.S.C. §1983 Substantive Due Process
### (Defendants OSU and Thomas Hansen)

48. Plaintiff realleges the prior paragraphs, as if fully set forth below.

49. Defendants' actions have violated Plaintiff's right to substantive due process as secured to him by the Fourteenth Amendment of the Constitution of the United States and enforced through 42 U.S.C. §1983.

50. As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged in an amount to be determined at trial but being not less than One Hundred Fifty Thousand ($150,000).

8

## COUNT III
### 42 U.S.C. §1983 Procedural Due Process
### (Defendants OSU and Thomas Hansen)

51.     Plaintiff realleges the prior paragraphs, as if fully set forth below.

52.     Defendants' actions have violated Plaintiff's right to procedural due process as secured to him by the Fourteenth Amendment of the Constitution of the United States and enforced through 42 U.S.C. §1983.

53.     As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged in an amount to be determined at trial but being not less than One Hundred Fifty Thousand ($150,000).

## COUNT IV
### Title VII National Origin Discrimination
### (Defendants OSU and CCHRI)

54.     Plaintiff realleges the prior paragraphs, as if fully set forth below.

55.     Defendant OSU discriminated against Plaintiff, including but not limited to, treating him differently than similarly-situated employees because of his national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq.

56.     As a direct and proximate result of Defendant's conduct, Plaintiff has been damaged in an amount to be determined at trial but being not less than One Hundred Fifty Thousand ($150,000).

## COUNT V
### Title VII Race Discrimination
### (Defendants OSU and Thomas Hansen)

57.     Plaintiff realleges the prior paragraphs, as if fully set forth below.

9

58.     Defendants OSU and CCHRI discriminated against Plaintiff, including but not limited to, treating him differently than similarly situated white employees because of her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq.

59.     As a result of Defendants' discriminatory conduct, Plaintiff has been damaged in an amount to be determined at trial but being not less than One Hundred Fifty Thousand ($150,000).

### COUNT VI
### Title VII Race Discrimination
### (Defendants CCHRI and Phillip Johnson)

60.     Plaintiff realleges the prior paragraphs, as if fully set forth below.

61.     Defendants OSU and CCHRI discriminated against Plaintiff, including but not limited to, treating him differently than similarly situated white employees because of her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq.

62.     As a result of Defendants' discriminatory conduct, Plaintiff has been damaged in an amount to be determined at trial but being not less than One Hundred Fifty Thousand ($150,000).

### COUNT VII
### National Origin and Race Discrimination, Ohio Rev. Code §4112.99
### (Defendants OSU and Thomas Hansen)

63.     Plaintiff realleges the prior paragraphs, as if fully set forth below.

64.     Defendant OSU's discriminatory treatment of Plaintiff because of his national origin and race violates Ohio Rev. Code §§4112.02(A) and 4112.99.

65.     As a result of Defendants' discriminatory conduct, Plaintiff has been damaged in an amount to be determined at trial but being not less than One Hundred Fifty Thousand ($150,000).

## COUNT VIII
## National Origin and Race Discrimination, Ohio Rev. Code §4112.99
## (Defendants CCHRI and Phillip Johnson)

66.     Plaintiff realleges the prior paragraphs, as if fully set forth below.

67.     Defendant CHRFs discriminatory treatment of Plaintiff because of his national origin  and race, including but not limited to, aiding, abetting or compelling acts declared by Ohio Rev. Code §4112.01 *et seq.* to be an unlawful discriminatory practice, violated Ohio Rev. Code §§4112.02(J), 4112. 02(A), and 4112.99.

68.     As a result of Defendants' discriminatory conduct, Plaintiff has been damaged in an amount to be determined at trial but being not less than One Hundred Fifty Thousand ($150,000).

## COUNT IX
## Infliction of Emotional Distress
## (Defendants OSU and CCHRI)

69.     Plaintiff realleges the prior paragraphs, as if fully set forth below.

70.     Defendants owed Plaintiff a duty to refrain from negligently or intentionally injuring him.

71.     Defendants breached their duties to Plaintiff.

72.     Defendants' negligent or intentional actions as set forth above proximately caused injury to Plaintiff in the form of embarrassment, mental anguish, loss of reputation, loss of self-esteem, harm to Plaintiff's relationship with his family, and other emotional distress.

73.     Defendants' actions proximately caused Plaintiff's damages arising from its negligent or intentional infliction of emotional distress.

74.     Defendants' actions constituted an outrageous invasion of Plaintiff's personal rights.

11

75.     Defendants acted willfully and maliciously, with spite and ill will, and with a reckless disregard for Plaintiff's legal rights.

76.     As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged in an amount to be determined at trial but being not less than One Hundred Fifty Thousand ($150,000).

### COUNT X
### Bad Faith Breach of Contract
### (Defendants OSU and CCHRI)

77.     Plaintiff realleges the prior paragraphs, as if fully set forth below.

78.     Plaintiff's contractual agreements with Defendants OSU and CCHRI gave rise to reciprocal duties of good faith.

79.     Defendants' conduct in terminating their respective contracts with Plaintiff, including their wrongful actions of terminating him to deprive him of the opportunity to continue the gainful employment in which he has engaged, and to cause him the loss of his research results, loss of reputation, humiliation, embarrassment, loss of self-esteem, and adverse health effects, was in bad faith.

80.     As a direct and proximate result of Defendants' bad faith termination of their contractual agreements with Plaintiff, Plaintiff has been damaged in an amount to be determined at trial but being not less than One Hundred Fifty Thousand ($150,000).

### COUNT XI
### Equitable Claim for Unjust Enrichment
### (Defendants OSU and CCHRI)

81.     Plaintiff realleges the prior paragraphs, as if fully set forth below.

82.     By virtue of wrongfully terminating Plaintiff, Defendants will be unjustly benefited by the Plaintiff's breakthroughs in HIV and AIDS research, the patents authored by

Plaintiff, the income stream generated from National Institute for Health grants obtained by Plaintiff through his efforts in prior years. Defendants, therefore, by terminating Plaintiff, will be unjustly enriched, at Plaintiff's expense.

83. As a direct and proximate result of Defendants' actions, Plaintiff has been damaged in an amount to be determined at trial but being not less than One Hundred Fifty Thousand ($150,000).

**COUNT XII**
**Injunctive Relief**
**(Defendants CCHRI and Phillip Johnson)**

84. Plaintiff realleges the prior paragraphs, as if fully set forth below.

85. Plaintiff is currently engaged in on-going experiments in HIV research which involve cultures that must be monitored and maintained on a regular and consistent basis.

86. HIV experiments take months and even years to complete.

87. Some of Plaintiff's on-going experiments were started several months ago.

88. Research experiments have no value unless the entire experiment is concluded as hypothesized and all of the results can be analyzed together.

89. If Plaintiff, by virtue of CCHRI's conduct, is required to abandon his on-going HIV experiments, not only will he lose any future results, but he will also have to discard the results which have been obtained over the past months.

90. Unless the Court intervenes, immediate and irreparable injury, loss, or damage will result to the Plaintiff including the loss of results from or the impairment of his research and the loss of eligibility to receive grants for which he has already applied, from the National Institute for Health.

91.     The damage to Plaintiff as described above, will result before CCHRI or its attorney can be heard in opposition.

92.     Plaintiff is entitled to preliminary injunction or in the alternative, a temporary restraining order, enjoining Defendant CCHRI to (a) reinstate Plaintiff to his position as a researcher; and (b) refrain from taking or continuing to take any action which would restrict or impede Plaintiff's ability to continue his on-going HIV experiments in the same manner as before until a further order of the Court.

### COUNT XIII
### Injunctive Relief
### (Defendants OSU and Thomas Hansen)

93.     Plaintiff realleges the prior paragraphs, as if fully set forth below.

94.     Defendant OSU has repeatedly failed to follow its own rules and procedures in the process of considering Plaintiff's tenure application which failures resulted in a fundamentally unfair denial of tenure to Plaintiff.

95.     Defendant OSU is now engaged in a "new" review of Plaintiff's tenure application as remanded by the Committee, and has again violated Plaintiff's rights as set forth in OSU's Administrative Code.

96.     If OSU is permitted to continue the current practice in regard to Plaintiff, the "new" review will have the same negative result as the previous flawed review process.

97.     Unless the Court intervenes, immediate and irreparable injury, loss, or damage will result to the Plaintiff in the loss of his employment.

98.     The damage to Plaintiff as described above, will result before OSU or its attorney can be heard in opposition.

14

99.     Plaintiff is entitled to preliminary injunction or in the alternative, a temporary restraining order, enjoining Defendant OSU to (a) reinstate Plaintiff to his position as an Assistant Professor in the Department of Pediatrics; and (b) suspend any further action in connection with Plaintiff's tenure application, until a further order of the Court.

**WHEREFORE,** Plaintiff prays this Court to:

(1)     Order the injunctive relieve prayed for above;

(2)     Enter a judgment finding that Defendants have violated federal and Ohio law as set forth above;

(3)     Order Plaintiff reinstated to his prior positions as a tenure track Assistant Professor and researcher or an equivalent position with Defendants OSU and CCHRI, together with all rights of seniority, pension, and benefits;

(4)     Order that Defendants pay to Plaintiff all wages and benefits due   and owing as a result of Defendants' discriminatory acts;

(5)     Award compensatory, punitive and liquidated damages to Plaintiff, in an amount to be determined at trial;

(6)     Award Plaintiff his costs and reasonable attorneys fees in this action; and

(7)     Grant such other and further relief as may be just and necessary.

Respectfully submitted,

**LAW OFFICES OF CHARLES A. McKINNEY**

/s/Charles A. McKinney
Charles A. McKinney (#0039214)
141 East Town Street, Suite 102
Columbus, Ohio 43215
Ph: (614) 460-9000
Fx: (937) 461-9640
Attorney for Plaintiff,
Kunal Saha

## JURY DEMAND

Plaintiff demands a trial by Jury on all counts triable to a Jury.

/s/Charles A. McKinney
Charles A. McKinney
Attorney for Plaintiff,
Kunal Saha

## VERIFICATION

STATE OF OHIO            )
                         )      ss:
FRANKLIN COUNTY          )


The undersigned being duly cautioned and sworn says that he has read the foregoing Verified Complaint for Wrongful Termination and that on the basis of his own knowledge, information or belief allegations contained therein are true.


/s/Kunal Saha, M.D., Ph.D. (per attorney)
Kunal Saha, M.D., Ph.D.


16

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon Kimberly Shumate, Esq., 33 West 11th Avenue, Room 209, Columbus, OH 43201, Attorney for The Ohio State University and Robin Canowitz, Esq., 700 Children's Drive, Columbus, OH 43205, Attorney for Columbus Children's Hospital Research Institute, by regular U.S. postage on this 13th day of March, 2006.

/s/Charles A. McKinney
Charles A. McKinney
Attorney for Plaintiff,
Kunal Saha