## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

KUNAL SAHA,

        **Plaintiff,**                             **Case No. 2:05-cv-190**
                                                **JUDGE GREGORY L. FROST**

    **v.**                                     **Magistrate Judge Norah McCann King**

THE OHIO STATE UNIVERSITY, et al.,

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of various motions to dismiss (Docs. # 17, 18, 19, 20) filed by Defendants The Ohio State University; Children's Research Institute; Philip Johnson, director of Children's Research Institute Division of Molecular Medicine; and current Ohio State University employees, Thomas Hansen, Frederick Sanfilippo, and Carole Anderson. Also before this Court is a memorandum in opposition (Doc. # 29) filed by Plaintiff Kunal Saha and a reply memorandum (Doc. # 30) filed by Defendant The Ohio State University. For the reasons that follow, this Court finds the motions well taken in regard to the federal claims and declines to exercise jurisdiction over the remaining state law claims.

### I.  Background

The Court will assume for the purposes of deciding the instant motion that the well-pleaded allegation in the Complaint are true. Plaintiff, Kunal Saha, is a naturalized citizen of the United States who resides in Ohio. Defendant The Ohio State University ("OSU") is an institution of higher learning located in Columbus, Ohio. Defendant Children's Research

Institute ("CRI") is a non-profit organization also located in Columbus, Ohio.  Defendant Philip

Johnson, M.D., ("Johnson")  is the Director of CRI's Division of Molecular Medicine.

Defendant Thomas Hansen, M.D., ("Hansen") is the Chairman of OSU's Department of

Pediatrics, Defendant Frederick Sanfilippo ("Sanfilippo") is the Dean of OSU's College of

Medicine, and Defendant Carole Anderson ("Anderson") is the Vice-Provost of OSU.

In June 1998, OSU appointed Saha for five years as a tenure-track assistant professor in

the Department of Pediatrics.  Saha concurrently worked for CRI as a member of the Division of

Molecular Medicine.  In that latter capacity, Saha's primary focus was HIV and AIDS research.

Saha took a leave of absence from work from January 2002 through April 2002.  Upon

returning to work, Saha learned that his funding was going to be cut and that Johnson had

accused him of inadequate monitoring of his students.  Saha's difficulties continued in his

reappointment review and culminated in his tenure review when, in an October 2003 vote,

OSU's Department of Pediatrics denied Saha's application for tenure.  The OSU College of

Medicine tenure committee then voted 11-0 to deny Saha promotion with tenure in January

2004.

Following his unsuccessful appeal of that decision, OSU informed Saha in June 2004 that

his salary was being reduced and that he was in a one-year terminal period.  His last day of

employment with OSU would be June 30, 2005.  Saha pursued another appeal, and this appeal

resulted in a remand to the department for re-voting by a majority of eligible department

members.  The June 2005 re-vote again produced an adverse tenure decision.  Saha's

employment with OSU therefore ended on June 30, 2005.  Because Saha was no longer an

employee of OSU, CRI also terminated his employment in July 2005.  Subsequently, in September 2005, Saha learned that he was not permitted to appeal the second denial of tenure.

Saha filed an initial suit against OSU and CRI on July 12, 2005, but this Court dismissed that action on October 26, 2005 for lack of subject matter jurisdiction and for failure to exhaust administrative remedies.  *See Saha v. The Ohio State University,* No. 05-CV-675, 2005 WL 2806318 (S.D. Ohio Oct. 26, 2005).  On March 13, 2006, Saha re-filed against OSU and CRI and named as additional defendants Johnson and Hansen.  (Doc. # 2.)  Saha subsequently filed his First Amended Complaint on June 28, 2006 and named as additional defendants Sanfilippo and Anderson.  (Doc. # 3.)  He alleges in the ten-count amended complaint that OSU and CRI discriminated against him based on his national origin and race in violation of Title VII.  (Doc. # 3 ¶¶ 92-100.)  He also asserts claims under 42 U.S.C. § 1983 against CRI, Hansen, Johnson, and Sanfilippo (Doc. # 3 ¶¶ 81-91), as well as claims against OSU and CRI under 42 U.S.C. § 1981 for breach of contract (Doc. # 3 ¶¶ 101-04) and for unjust enrichment under state law against OSU and CRI (Doc. # 3 ¶¶ 119-21).  Finally, Saha asserts additional state law claims for race and national origin discrimination against OSU, CRI, Johnson, Hansen, Sanfilippo, and Anderson (Doc. # 3 ¶¶ 105-10) and for intentional infliction of emotional distress against all defendants (Doc. # 3 ¶¶ 111-18).

Defendants have all filed motions to dismiss.  (Docs. # 17, 18, 19, 20.)  Briefing on the motions has closed, and the motions are now ripe for disposition.

## II. Standards of Review

Federal Rule of Civil Procedure 12(b)(1) provides that an action may be dismissed for lack of subject matter jurisdiction.  Under the Federal Rules of Civil Procedure, "[p]laintiffs have the burden of proving jurisdiction in order to survive a Rule 12(b)(1) motion." *Weaver v. Univ. of Cincinnati*, 758 F. Supp. 446, 448 (S.D. Ohio 1991) (citing *Moir v. Greater Cleveland Reg'l. Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).  *See also Rapier v. Union City Non-Ferrous, Inc.*, 197 F. Supp. 2d 1008, 1012 (S.D. Ohio 2002) (citing *McNutt v. General Motors Acceptance Corp. of Indiana, Inc.*, 298 U.S. 178, 189 (1936); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)) ("The plaintiff bears the burden of establishing, by a preponderance of the evidence, the existence of federal subject matter jurisdiction").  Moreover, this Court may resolve any factual disputes when adjudicating a defendant's jurisdictional challenge. *See Moir*, 895 F.2d at 269.

Pursuant to Federal Rule of Civil Procedure 12(b)(5), a trial court may, upon motion, dismiss a complaint for failure to make proper service of process within the 120 days after the complaint is filed as required by Federal Rule of Civil Procedure 4(m).  Proper service on individuals within a judicial district of the United States must conform to Federal Rule of Civil Procedure 4(e), which states:

> Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, . . . may be effected in any judicial district of the United States:
>
> (1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or

4

(2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or law to receive service of process.

Fed. R. Civ. P. 4(e).

In contrast to Rule 12(b)(1) and Rule 12(b)(5), Federal Rule of Civil Procedure 12(b)(6) requires an assessment of whether a plaintiff has set forth claims upon which a court may grant relief.  For a Rule 12(b)(6) analysis, a court must construe a complaint in favor of the plaintiff, accept the factual allegations contained in the complaint as true, and determine whether the plaintiff can prove any set of facts in support of his or her claims.  *Goad v. Mitchell*, 297 F.3d 497, 500 (6th Cir. 2002) (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 638 (6th Cir. 2001)); *Weaver*, 758 F. Supp. at 448 (citing *Jones v. Sherrill*, 827 F.3d 633, 638 (6th Cir. 2001)).  In other words, "a complaint will be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief."  *The Limited, Inc. v. PDQ Transit, Inc.*, 160 F. Supp. 2d 843, 843 (S.D. Ohio 2001) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)).

### III.  Discussion

**A.  OSU**

In his memorandum in opposition, Saha concedes that the Eleventh Amendment bars his § 1981 claim against OSU and that the Ohio Court of Claims has exclusive jurisdiction over all

of his state law claims against OSU.  (Doc. # 29, at 2.)  Therefore, Saha's sole remaining claim against OSU is that OSU discriminated against him because of his race and national origin, and as a result, denied him tenure in violation of Title VII.  OSU continues to move for dismissal of this claim on the grounds that Saha failed to effect service of process on it within 120 days of filing the complaint.

Saha neither argues that he effected service within the time allowed by the Civil Rules nor that there is good cause for his failure to effect service.  (Doc. # 29, at 5.)  Instead, citing unsubstantiated "good faith efforts to effect proper service," Saha contends that the Court in its discretion should simply grant him an extension of time in which to effect service even in the absence of good cause.  (Doc. # 29, at 10.)

Rule 4(m) requires this Court to undertake a two-part analysis.  *Stewart v. Tenn. Valley Authority,* 238 F.3d 424 (6th Cir. 2000).  First, the court must determine whether the plaintiff has shown good cause for failure to effect service.  *See id.*  If he has, then "the court *shall* extend the time for service for an appropriate period."  *Id.*  Second, if the plaintiff has not shown good cause, the court must either (1) dismiss the action or (2) direct that service be effected within a specified period of time.  *See id.*  The Court has discretion to permit late service even absent a showing of good cause.  *Id.* (citing *Henderson v. United States,* 517 U.S. 654, 662 (1996)).

Saha has failed to persuade this Court that good cause exists to excuse his failure of service.  His failure to perfect service belies his contention that he can and would effectuate service with ease if granted additional time.  Accordingly, the Court in its discretion dismisses without prejudice the entirety of his claims against OSU under Rule 12(b)(5).  *See Nafziger v.*

*McDermott Int'l, Inc.*, 467 F.3d 514, 521-22 (6th Cir. 2006) (affirming dismissal in light of failure to present good cause).  Additionally, the Court recognizes that Saha has conceded the dismissal of Counts VI, VII, IX, and X under Rule 12(b)(1).

## B.  CRI

### 1.    *Federal Claims*

#### a.     *Section 1983 Claims*

Section 1983 provides a cause of action against any person who, under color of state law, deprives an individual of any right, privilege, or immunity secured by the Constitution or federal law.  42 U.S.C. § 1983.  To succeed on his § 1983 claims, Saha must prove that: (1) he was deprived of rights, privileges, or immunities secured by federal law; and (2) the conduct complained of was committed by a person acting under the color of law.  *See Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998).  Citing this standard, CRI moves for dismissal on the grounds that § 1983 applies only in the context of state action and that no facts in Saha's pleading indicate that it was acting under color of state law.

CRI is indeed correct that nothing in Saha's pleading suggests that CRI is a state actor except for the conclusory allegation that CRI "acted under the color of law at all material times." (Doc. # 3 ¶ 82).  This allegation is insufficient to establish that CRI was a state actor at the time of the alleged constitutional violation.  Saha's mere conclusory statements that CRI was acting under color of law is insufficient because this Court is not required to accept as true conclusory legal statements when determining whether a plaintiff has stated a claim under § 1983.  *Kottmyer v. Maas,* 436 F.3d 684, 688 (6th Cir. 2006).  Additionally, Sixth Circuit precedent indicates that

the mere fact that a hospital is licensed by the state is insufficient to transform it into a state actor

for the purposes of § 1983.  *See Crowder v. Conlan*, 740 F.2d 447, 451 (6th Cir. 1984) (citing

*Jackson v. Metro. Edison Co.,* 419 U.S. 345, 350 (1974) ("State regulation of a private entity,

even if it is 'extensive and detailed' is not enough to support a finding of state action.").  Nor has

Saha pled facts suggesting (1) that CRI exercised powers that are traditionally reserved

exclusively to the state, (2) that the state exercised such coercive power or provided such

significant encouragement–either overt or covert–that in law the actions of CRI are deemed to be

those of the state, or (3) that there is a sufficiently close nexus between the state and the

challenged actions so that the CRI's actions may be fairly treated as that of the state itself.  *See*

*Collyer v. Darling*, 98 F.3d 211, 232 (6th Cir. 1996) (describing private actors being regarded as

state actors under the public function test, the state compulsion test, and the symbiotic

relationship or nexus test).

The allegations in Saha's amended complaint are insufficient to establish that the non-

profit CRI was a state actor at the time of the alleged constitutional violations.  CRI is therefore

entitled to dismissal of the § 1983 claim against it.

### b.    *Title VII Claims*

Saha alleges that CRI discriminated against him due to his national origin and race and

that as a result of this discriminatory treatment, he was denied tenure at OSU.  Such action, he

contends, exposes CRI to liability under Title VII.  Under Title VII, an employer is prohibited

from discriminating against any individual "with respect to his compensation, terms, conditions,

or privileges of employment, because of such individual's race, color, religion, sex, or national

origin." 42 U.S.C. § 2000e-2(a)(1).

The plaintiff in a Title VII claim bears the initial burden of proving discrimination by the

defendant. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). To survive a

12(b)(6) motion to dismiss claims of disparate treatment in employment based on race, a plaintiff

must include factual allegations in the complaint that indicate the existence of direct evidence of

discriminatory actions by the defendant or by showing the existence of circumstantial evidence

that creates an inference of discrimination. *Talley v. Bravo Pitino Rest., Ltd.,* 61 F.3d 1241,

1246 (6th Cir. 1995). Under this latter approach, to establish a *prima facie* case, the plaintiff

must show that: (1) he is a member of a protected class; (2) he was subject to an adverse

employment action; (3) he was qualified; and (4) he was treated less favorably than a similarly

situated employee outside of a protected class. *Hall v. Baptist Mem'l Health Care Corp.,* 215

F.3d 618, 626 (6th Cir. 2000). In cases where denial of tenure is the alleged adverse

employment decision, the plaintiff must show that non-protected persons with similar

qualifications were granted tenure. *See Shaw v. Danley,* 2000 U.S. App. LEXIS 545 (Jan. 10,

2000) (citing *Carlile v. South Routt Sch. Dist. RE-3J,* 739 F.2d 1496, 1500 (10th Cir. 1984)).

Saha has failed to allege facts presenting a *prima facie* case against CRI. It is undisputed

that as an Indian-born individual, Saha is a member of Title VII's protected class. Moreover, he

was subject to an adverse employment action in the form of denial of tenure, and he has alleged

that OSU has approved only American-born candidates for tenure in the past five years. But

Saha has notably failed to allege how *CRI* was involved in any way with what he describes in

Counts IV and V as the causative action that led to his termination from CRI: OSU's decision to

9

deny him promotion and tenure.  (Doc. # 3 ¶¶ 93-95.)  Although Saha's appointment at CRI was contingent upon his continuing appointment at OSU, Saha has failed to present any factual contention that CRI played *any* role in the decision to deny him promotion and tenure. Accordingly, this Court finds well taken CRI's motion to dismiss the Title VII claim.

> ### c.      *Section 1981 Claim*

Saha also attempts to impose liability on CRI by alleging bad faith breach of contract in violation of § 1981.  (Doc. #3 ¶¶ 101-04.)  This statute provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  The statute also states that "[f]or purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  Claims brought under § 1981 are governed by the same framework applied to Title VII claims.  *See Patterson v. McLean Credit Union,* 491 U.S. 164 (1989); *Betkerur v. Aultman Hospital Ass'n.,* 78 F.3d 1079, 1094 (6th Cir. 1996).  Therefore, the "elements of a *prima facie* case are the same for employment claims stemming from Title VII and § 1981."  *Johnson v. Univ. of Cincinnati,* 215 F.3d 561, 573 n.5 (6th Cir. 2000).

As established above, a plaintiff asserting a Title VII claim must plead the essential elements of a *prima facie* case.  411 U.S. at 802.  Because Saha failed to present the elements of a *prima facie* case under Title VII against CRI, he has also failed to meet his burden under §

10

1981.  There is no factual allegation that CRI engaged in conduct that led to Saha's denial of

tenure and the loss of his OSU job, which he pleads led to the loss of his CRI job.  Absent

relevant impermissible conduct by CRI, there can be no viable § 1981 claim.  The Court

therefore concludes that CRI is also entitled to dismissal of Saha's § 1981 breach of contract

claim.[1]

### 2.    State Law Claims

The Court has dismissed Saha's federal claims against CRI.  This leaves Saha's

remaining state law claims.  Having dismissed his federal claims, the Court presumptively

should not address the state law claims.  *See Jackson v. Heh*, 215 F.3d 1326, 2000 WL 761807,

at *8 (6th Cir. 2000) (unpublished table decision) (referencing 28 U.S.C. § 1367 and stating that

"[w]here, as here, a federal court has properly dismissed a plaintiff's federal claims, there is a

'strong presumption' in favor of dismissing any remaining state claims unless the plaintiff can

establish an alternate basis for federal jurisdiction.") (citing *Musson Theatrical, Inc. v. Fed.*

*Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1998)).  Saha has failed to suggest any justification

or alternative basis for exercising jurisdiction over his state law claims should his federal claims

fail.  Accordingly, the Court in its discretion declines to exercise its supplemental jurisdiction

over Saha's remaining state law claims, *see* 28 U.S.C. § 1367(c)(3) and (4), and dismisses said

claims without prejudice.

---

[1] CRI explains in its motion to dismiss why Saha could not assert a state law tort claim for breach of contract.  There is no apparent basis for concluding that Saha intended to assert such a state law claim here, and Saha has not responded to correct the reasonable interpretation that he intended to assert only the federal claim.

Having concluded that the rationale set forth above disposes of Saha's claims against CRI, the Court need not and does not address CRI's alternative theories for dismissal.

## C.  Johnson

### 1.  Section 1983 Claims

As established above, CRI is not subject to § 1983 liability because it is not considered a state actor within the breadth of the statute.  Similarly, a § 1983 suit for damages against a hospital official cannot be maintained pursuant to § 1983 if the plaintiff fails to allege facts indicating that the hospital official was acting under color of law when the alleged violation of federal rights occurred.  *See Kottmyer v. Maas,* 436 F.3d 684, 688 (6th Cir. 2006).

Nothing in Saha's amended complaint suggests that Johnson, as the Director of CRI's Division of Molecular Medicine, is a state actor except the allegation he "acted under the color of law at all material times."  (Doc. # 3 ¶ 82.)  As stated above, this conclusory allegation is insufficient to establish that Johnson was a state actor at the time of the alleged violation. Therefore, this Court finds Johnson's motion to dismiss the § 1983 claims against him well taken.

### 2.  State Law Claims

The Court has dismissed Saha's federal claims against Johnson.  This leaves Saha's remaining state law claims against Johnson.  Having dismissed the federal claims, the Court presumptively should not address these state law claims.  *See Jackson*, 215 F.3d 1326, 2000 WL 761807, at *8.  Accordingly, the Court in its discretion declines to exercise its supplemental

jurisdiction over Saha's remaining state law claims against Johnson, *see* 28 U.S.C. § 1367(c)(3) and (4), and dismisses said claims without prejudice.

Because the rationale set forth above disposes of Saha's claims against Johnson, the Court need not and does not address Johnson's alternative theories for dismissal.

## D. Hansen, Sanfilippo, & Anderson

### 1. Section 1983 Claims Against Hansen and Sanfilippo in their Official Capacities.

Saha alleges that Hansen and Sanfilippo, acting in their *official* capacities, are subject to liability for violations of § 1983. That statute provides a cause of action against only a "person who, under color of any statute . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights secured by the Constitution." 42 U.S.C. § 1983. But in general, "state governments and entities that can be considered arms of the state are immune from suits for money damages under the Eleventh Amendment." *Alkire v. Irving*, 330 F.3d 802, 814 (6th Cir. 2003) (citing *Brotherton v. Cleveland*, 173 F.3d 552, 560 (6th Cir. 1999)). Specifically, the Eleventh Amendment bars § 1983 suits from seeking money damages against states and state employees sued in their official capacities. *See Will v. Mich Dep't of State Police*, 491 U.S. 58, 66 (1989).

The Eleventh Amendment applies to this case because Saha is suing employees of OSU, which is an "alter ego of the State of Ohio for eleventh amendment purposes." *Bailey v. The Ohio State University*, 487 F. Supp. 601, 606 (S.D. Ohio 1980). When "employees of a State face a lawsuit based on the actions they took in their official capacities, the lawsuit is deemed to

13

be against the State" itself. *Hall v. Medical College of Ohio at Toledo*, 742 F.2d 299, 307 (6th Cir. 1984). A plaintiff cannot therefore maintain a § 1983 action seeking money damages, as opposed to some form of prospective injunctive relief, against state officials in their official capacity. *See Wolfel v. Morris*, 972 F.2d 712 719 (6th Cir. 1992) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Saha's claims against defendants Hansen and Sanfilippo in their official capacity are thus barred, and the Court finds well taken the motion to dismiss Saha's claim for § 1983 liability against Hansen and Sanfilippo in their *official* capacity.

### 2. *Section 1983 Claims Against Hansen and Sanfilippo in their Individual Capacities*

Saha's claims against Hansen and Sanfilippo in their *individual* capacities are based on alleged equal protection, substantive due process, and procedural due process violations. Hansen and Sanfilippo move for dismissal on the grounds that they are entitled to qualified immunity.

The qualified immunity doctrine, under certain circumstances, operates to shield from civil liability officials who are performing official duties. *Sinick v. County of Summit*, 76 F. App'x 675, 678-79 (6th Cir. 2003). This affirmative defense is meant to safeguard an official's proper decision making process and offers that party potential relief from frivolous suits. *See D'Agastino v. City of Warren*, 75 F. App'x 990, 993 (6th Cir. 2003). The Sixth Circuit has explained that qualified immunity "shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id*. (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In addition to shielding officials from liability, qualified immunity may entitle the official to not stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S.194,

200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  This principal directs courts to make a ruling on the issue of qualified immunity early in the proceedings, so that the costs and expenses of trial are avoided where the defense is dispositive.  *Id.*

The Supreme Court has instructed lower courts to use a distinct analysis to determine whether the application of qualified immunity is warranted.  In addressing the potential applicability of qualified immunity, a court follows a sequential inquiry: "First, the court considers whether, on the plaintiff's facts, there has there been a violation.  Second, the court considers whether that violation involved 'clearly established constitutional rights of which a reasonable person would have known.' " *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002) (quoting *Dickerson v. McClelland*, 101 F.3d 1151, 1158 (6th Cir. 1996)).  *See also Saucier*, 533 U.S. at 201.  This analytic approach has also been characterized as a three-part inquiry in which a court must ask:

> 1) has a constitutional violation occurred; 2) was that right a clearly established right of which a reasonable person would have known; and 3) has the plaintiff alleged sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights"?

*Id*. at 679 (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).  *See also Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991) ("A public official is entitled to qualified immunity for conduct in performing discretionary functions so long as that conduct does not violate clearly established statutory or constitutional rights of which a reasonable [official] would have known").

The doctrine of qualified immunity thus recognizes that an official can be found to have violated the constitution, but be granted immunity for *reasonable* mistakes as to the legality of

his or her action. *Saucier*, 533 U.S. at 206.  The reasonableness of such mistakes is inherently dependant upon the clarity of the legal constraints involved; the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  *Id*. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In determining whether a defendant is entitled to qualified immunity, "[t]he ultimate burden of proof is on [the plaintiff] to show that [the defendants] are not entitled to qualified immunity."  *Wegener*, 933 F.2d at 392.  *See also Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992).  Further, "[w]hen ruling on qualified immunity, the district court should indicate the clearly established right at issue and the factual basis for its conclusion that a genuine issue exists as to the commission of acts violating that right." *Wegener*, 933 F.2d at 392 (citing *Poe v. Haydon,* 853 F.2d 418, 423-24, 426 (6th Cir. 1988)).  The Court will therefore begin its analysis by examining whether Saha has alleged facts that show that a constitutional violation has occurred.  If Saha has failed to assert sufficient allegations to withstand the qualified immunity defense, the Court shall grant the motion to dismiss.  *See Martin v. City of Eastlake,* 686 F. Supp. 620 (N.D. Ohio 1988).

### a.    *Equal Protection Claim against Hansen*

Saha's § 1983 claim against Hansen includes an allegation that Hansen violated his Fourteenth Amendment right to equal protection.  The Sixth Circuit has recognized that "[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metropolitan Sewer District*, 922 F.2d 332, 341 (6th Cir. 1990) (quoting *Johnson v.*

*Morel*, 876 F.2d 477, 479 (5th Cir. 1989) (en banc)).  However, Saha's pleading does not allege

*any* facts to support that Hansen discriminated against him or failed to recommend him for

tenure because of his race or national origin.  Although Saha does allege Hansen knowingly

supported false allegations regarding Saha's supervision of his students, Saha does not allege

that Hansen intentionally discriminated against him on the basis of national origin and race

during his tenure review.  (Doc. # 3 ¶¶ 38-39.)  Saha has thus failed to allege a clear

constitutional violation on the part of Hansen so as to preclude application of qualified immunity

to the equal protection claim.

### b.    *Substantive Due Process Claim against Hansen*

Substantive due process protects individuals from arbitrary action by the government.

*County of Sacramento v. Lewis*, 523 U.S. 833. 845 (1998).  Generally, a deprivation of

substantive due process claim involves a government official's abuse of authority by acting in an

arbitrary and capricious manner to deprive another of a property or liberty right.  In loss of

tenure cases, substantive due process "requires that the termination of a tenured professor's

property interest not be 'arbitrary, capricious, or without a rational basis.' " *Anderson v. The*

*Ohio State University*, No. C-2-00-123, 2001 U.S. Dist. LEXIS 25376, at *23 (S.D. Ohio Jan.

22, 2001) (quoting *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (1998)).  However,

"only the most egregious official conduct can be said to be 'arbitrary in the constitutional

sense.'" *Lewis,* 523 U.S. at 846 (citing *Collins v. City of Harker Heights,* 503 U.S. 115, 129

(1992)).  In determining what level of conduct is egregious enough to constitute a violation of

substantive due process, the Supreme Court asks whether the conduct "shocks the conscience."

*Id.*

Similar to his equal protection pleading, Saha also fails to allege any conduct on the part of Hansen to support a substantive due process claim.  Accepting as true that Hansen knowingly supported false allegations regarding Saha's monitoring of his students, the Court recognizes that the alleged conduct does not state a claim for shockingly arbitrary and capricious deprivation of a property interest.  As stated above, Saha still received a hearing that comports with constitutional standards and was afforded the opportunity to appeal the initial denial of tenure. He had a meaningful opportunity to address his grounds for dismissal, and Saha has failed to present allegations targeting the infringement of a fundamental right.[2]  Therefore, Hansen is also entitled to qualified immunity on Saha's § 1983 substantive due process claim.

### c.       Procedural Due Process Claim against Hansen and Sanfilippo

A professor who is eligible for tenure consideration has some minimal property interest in a fair tenure review process.  *See Purisch v. Tennessee Technological University,* 76 F.3d 1414, 1423 (6th Cir. 1996).  Thus, procedural due process entitles such a professor to notice and the  opportunity to be heard prior to deprivation of his property interest.  *See Stringfield v. Graham*, No. 04-5777, 2007 WL 62630, at *6 (6th Cir. Jan. 8, 2007).

According to Saha's pleading, OSU's policies and appointment of faculty include a "mandatory review for promotion in [their] fourth year of employment" and "OSU rules provide that the fourth-year review must occur at least two calendar years prior to the tenure review."

---

[2]  Numerous courts have held that where the party's substantive due process claim is based on alleged acts of discrimination, that claim should be analyzed under the framework of the Equal Protection Clause, rather than as a substantive due process claim.  *See Eby-Brown Co., LLC v. Wisconsin Dep't of Agriculture,* 295 F.3d 749, 754 (7th Cir. 2002); *Yassini v. City of Sunnyvale,* 103 F.3d 143, 1996 WL 711434 (9th Cir. Dec. 5, 1996); *Fernandez v. City of Pataskala,* No. 2:05-CV-75, 2002 WL 3257389 (S.D. Ohio Nov. 9, 2006).

18

(Doc. # 3 ¶¶ 30, 42.)  OSU has clearly promulgated rules and fostered mutual understandings regarding entitlement to a merit-based tenure review.  *See Board of Regents v. Roth,* 408 U.S. 564, 577 (1972).  Consequently, the university may not deny a candidate tenure without some degree of impartial inquiry into his or her qualifications.

Saha alleges a number of ways in which Hansen and Sanfilippo purportedly failed to follow established guidelines in overseeing his tenure hearings.  Violation of a state's formal procedure, however, does not in and of itself implicate constitutional due process.  *See Levine v. Torvik,* 986 F.2d 1506, 1515 (6th Cir.) ("A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be admissible.") *cert. denied*, 125 L. Ed. 2d 694 (1993).  In other words, the issue before this Court is not whether Hansen and Sanfilippo conformed to every aspect of the official tenure practices.  Rather, the issue is whether Saha was afforded the process due to protect his property right to a fair tenure review process.

As noted, "some form of hearing is required before an individual is finally deprived of a property interest."  *Mathews v. Eldridge,* 424 U.S. 319, 333 (1975) (citations omitted).  The form of hearing required depends upon an "analysis of the governmental and private interests that are affected."  *Id.* at 334.  Courts should consider the following factors in determining the degree to which a hearing in a particular case must resemble a full blown judicial trial: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation and value of additional procedure; and (3) the state's interest regarding fiscal and administrative burdens involved in such hearings.  *See id.* at 335.

In applying the *Mathews* balancing test in denial-of-tenure cases, the Sixth Circuit has held that less than a full evidentiary hearing is required prior to termination.  *See Purisch*, 76 F.3d at 1424.  Specifically, the Sixth Circuit has stated that "[p]rofessors with tenure or with a continuing contract may not be discharged without receiving a hearing in which they are informed of the grounds for their dismissal and given the opportunity to challenge the sufficiency of those grounds."  *Johnston-Taylor v. Gannon,* 907 F.2d 1577, 1581 (6th Cir. 1990).

Applying that standard to the facts of this case, this Court recognizes that Saha has failed to state a claim for a deprivation of procedural due process.  Saha does not deny that he was informed of the grounds supporting a possible dismissal.  Rather, his allegations challenge his opportunity to address those grounds as well as the propriety of Defendants' decision to recommend termination.  (Doc. # 3 ¶¶ 32, 34, 48.)  However, procedural due process is concerned only with whether the Plaintiff received a meaningful opportunity to present his case, and there are no factual allegations that Saha was not afforded this opportunity at one time or another during the entirety of the tenure process.  His pleading asserts that Hansen and Sanfilippo refused to provide some procedure.  However, none of these allegations, considered separately or as a whole, support a claim that Hansen and Sanfilippo deprived Saha of a meaningful opportunity to challenge the grounds for dismissal.  Saha was asked to present his "completed dossier" for review and the Department of Pediatrics obtained 3 of the 5 "requisite external evaluation letters."  (Doc. # 3 ¶¶ 43, 45.)  Additionally, according to his own account of the facts, Saha was given ten calendar days in which to provide written comments after the Department of Pediatrics decided not to recommend him for tenure.  (Doc. # 3 ¶ 50.)  Moreover, Saha admits that he was also provided the opportunity to appeal the denial of tenure to the OSU

20

Committee on Academic Freedom and Responsibility ("CAFR").  (Doc. # 3 ¶ 55.)  When CAFR determined there may have been some problems with the voting process in Saha's first denial of tenure, his application was sent back to the Department of Pediatrics for further review, which included a re-vote by a majority of eligible faculty in the department.  (Doc. # 3 ¶ 61.)  The system afforded him procedural due process, even if he did not get repeated attempts on remand to renew his objections.  Notably, Saha's pleading attributes this loss of opportunity to be heard to OSU and not to Hansen or Sanfilippo.  Although Saha disputes the overall conclusion that the Department of Pediatrics reached, his own factual allegations indicate that the conclusion was the result of an impartial and thorough inquiry that satisfies the requirement of due process. Accordingly, Saha has failed to state a claim for violation of his right to procedural due process, and Hansen and Sanfilippo are therefore entitled to qualified immunity on this last aspect of his § 1983 claim.

### 3.    *State Law Claims*

The Court has dismissed Saha's federal claims against Hansen and Sanfilippo.  This leaves Saha's remaining state law claims against Hansen, Sanfilippo, and Anderson.  But as stated above, having dismissed Saha's federal claims, the Court presumptively should not address his state law claims.  *See Jackson*, 215 F.3d 1326, 2000 WL 761807, at *8. Accordingly, the Court in its discretion also declines to exercise its supplemental jurisdiction over Saha's state law claims against Hansen, Sanfilippo, and Anderson, *see* 28 U.S.C. § 1367(c)(3) and (4), and dismisses said claims without prejudice.

As with the other defendants, the Court again concludes here that because the foregoing rationale disposes of Saha's claims against Hansen, Sanfilippo, and Anderson, the Court need not and does not address these defendants' alternative theories for dismissal.  The Court finds the motion to dismiss well taken under Rules 12(b)(1) and (6).

### IV.  Conclusion

For the foregoing reasons, the Court **GRANTS** OSU's motion to dismiss Saha's complaint without prejudice (Doc. # 17), **GRANTS** Defendants CRI, Johnson, Hansen, Sanfilippo, and Anderson's motions to dismiss Saha's federal claims (Docs. # 18, 19, 20), and **DISMISSES** the remaining state law claims.[3]  The Clerk is instructed to enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

_____/s/ Gregory L. Frost_____
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

---

[3]  Saha's January 29, 2007 motion for a status conference is therefore moot.  (Doc. # 42.)